No. 51,813

STATE OF KANSAS, *Appellee,* v. DAVID L. KNOXSAH, *Appellant.*

(622 P.2d 140)

Opinion filed January 17, 1981.

*James E. Rumsey,* of Young & Rumsey, of Lawrence, argued the cause and was on the brief for the appellant.

*Craig A. Stancliffe,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Michael J. Malone,* district attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

MILLER, J.: The defendant, David L. Knoxsah, brings this appeal following his conviction by a jury in Douglas district court of aggravated robbery, K.S.A. 21-3427, and involuntary manslaughter, K.S.A. 1979 Supp. 21-3404. He presents two issues for appellate review: whether the evidence is sufficient to establish that the deceased's death resulted from a criminal act or acts of the defendant, and whether the trial court properly submitted the issue of voluntary intoxication to the jury. The first issue requires a rather detailed statement of the evidence.

Knoxsah was convicted of robbing and killing Herl Wilson Houseworth, a hobo who lived under the south end of the Kansas River bridge in Lawrence. The case against Knoxsah was established largely through the testimony of the deputy coroner, Dr. J. Alan Sanders, and of two accomplices to the robbery and beating, Levi Cummings and George Mahkuk. Cummings testified that on August 5, 1979, he was in a private club in Lawrence known as The Flame, which is near the Kansas River bridge. At The Flame, he met Mahkuk and Knoxsah, and they did some extensive drinking. The three men left the club together and walked to the south end of the bridge. At that point, Knoxsah said he had to see a man that he knew. Knoxsah jumped down under the bridge. When Cummings and Mahkuk got there a few minutes later, they saw Knoxsah beating Houseworth. Apparently Houseworth had been asleep; Knoxsah passed around a whiskey bottle he found

by Houseworth's head, and the three ate a can of Spam that they found among Houseworth's possessions. Knoxsah continued to beat Houseworth with his fists, and sometimes with a belt and buckle which he pulled out of Houseworth's trousers. Knoxsah also pulled the trousers off of Houseworth and threw them to Cummings; Cummings found about sixty dollars in the pants, and Knoxsah immediately took the money. Both Cummings and Mahkuk participated in the beating, but Knoxsah was by far the most active participant. He not only beat Houseworth with his fists and the belt, he kicked him in the body and in the face. After the beating, Knoxsah poured charcoal lighter fluid over Houseworth's body and threatened to set him on fire; Cummings or Mahkuk prevented it. The men then left.

The beating occurred on Sunday evening. On the following morning, several persons saw Houseworth under the bridge without his pants, and noticed that he was bruised; one of these persons was a police officer who called for an ambulance which Houseworth refused. Several other witnesses testified that they saw Houseworth walking around Lawrence on Monday, the day following the beating. Three of these witnesses did not remember whether Houseworth looked bruised or beaten; another did not see him well enough to tell whether he was injured. Mr. Souders saw Houseworth on Monday, but he didn't see any of the bruises and cuts which were evident in the pictures of Houseworth's body. A grocery store clerk remembered that Houseworth came in on Monday for some free "rolling papers"; she remembered that he was scraped, cut and bruised about the face, but "not badly." She did not think he looked as bruised as the pictures showed.

Houseworth's body was found early Tuesday morning, a short distance from his "home" under the bridge. The police and the deputy coroner were called, and the body was taken to the morgue. Dr. Sanders, a physician specializing in pathology, and who had performed some 850 to 900 autopsies, performed the autopsy upon the body of Herl Wilson Houseworth. He found extensive bruises externally; both eyes were blackened, there were large bruises involving the front region of the neck just below the chin, the lips were bruised and swollen, there was a scratch between the eyes up on the forehead, there were bruises on the front part of the upper chest, there was a large bruise six or seven inches in diameter on the left side of the chest, and the

front of the abdomen was bruised. Internally, he found one broken rib on the right side; air bubbles underneath the skin of the chest; evidence that the deceased had vomited some material from his stomach and had taken that into his lungs, destroying the lining of the trachea and bronchi, and causing pneumonia or inflammation of the lungs; and a laceration to the lining of the chest cavity. In the abdomen, he found bruises on the surface of the liver, bleeding underneath some of the membrane which supports the small intestine, bleeding underneath the capsule of the liver, and bleeding from the interior of the back wall of the abdominal cavity. It appeared that the bruising and bleeding of the back wall of the abdominal cavity was caused by force applied to the front of the body. There was bleeding both inside the abdominal cavity and bleeding into the tissue of that cavity. Examination inside the cranium disclosed intense red-purple discoloration of the frontal part and the left major lobe of the brain. There was blood underneath the membrane which covers the brain, disclosing a concussion both in the frontal part and in the left lobe, which the doctor concluded was caused by blows to the head. He was of the opinion that the injuries to the face, head, neck, chest, and abdomen were inflicted by someone and were not caused by falling.

Dr. Sanders found no indication of thrombosis, heart attack, kidney disease, or cirrhosis of the liver; he stated that Mr. Houseworth was in generally good physical condition for a man his age and life-style. He concluded "within the bounds of medical certainty" that Houseworth's death was caused by a combination of things—the injury to the brain with hemorrhage beneath the lining, the injury to the chest with the fractured rib, the injury of the inside of the abdomen as well as the wall of the abdomen, the aspiration of gastric content, and the presence of pneumonia. On cross-examination he stated that though some of the bruises were compatible with falling, he felt that the injuries sustained by Houseworth came from a beating. He based this primarily on the distribution—the parts of the body that were affected. He also said that it was conceivable that Houseworth could walk around after receiving the injuries.

The first point raised is that the evidence is insufficient to establish that death resulted from a criminal act or acts of the defendant. Knoxsah relies primarily upon *State v. Doyle,* 201

Kan. 469, 441 P.2d 846 (1968), and contends that the evidence here suggests death by natural causes (respiratory failure after ingesting vomit) as strongly as it suggests death caused by the beating.

We recently reviewed the law of homicide and particularly the State's burden of establishing the corpus delicti by sufficient evidence in *State v. Henderson,* 226 Kan. 726, 731-33, 603 P.2d 613 (1979), and we need not repeat all that we said there. The suggestion in *Doyle* that the evidence must *exclude* the possibility of death by suicide or natural causes has not been followed in our later cases. See *Henderson,* 226 Kan. at 732; *State v. Johnson,* 222 Kan. 465, 565 P.2d 993 (1977); *State v. Sparks,* 217 Kan. 204, 535 P.2d 901 (1975); and *State v. Sagebiel,* 206 Kan. 482, 480 P.2d 44 (1971).

The present case is readily distinguishable upon the facts from *Doyle.* In *Doyle* there was no evidence to link the defendant with the killing, no evidence that the defendant shot the deceased or committed any act which caused his death. The deceased in *Doyle* was found slumped over the steering wheel of his motor vehicle, a pistol laying by his right hand and a single bullet wound in his right temple; there was no evidence that the accused was ever at the scene. Here there is evidence—not refuted or contradicted—that Knoxsah kicked and beat Houseworth repeatedly in the head, neck, chest and abdomen, and there is expert testimony that the injuries received in the beating combined with Houseworth's aspiration of vomit to cause his death. The weight of the evidence was for the jury; it could accept or reject defendant's theory that death was the result of natural causes. It is possible that Houseworth's death *could* have resulted solely from over-intoxication, vomiting, ingestion of disgorged stomach contents, and respiratory failure. The evidence indicated, however, that Houseworth had but a trace of alcohol in his blood; there was no evidence of significant intoxication. Further, there was voluminous evidence of massive injury and expert opinion correlating that injury with Houseworth's death. These matters were presented and argued to the jury; the determination of cause was thus properly and peculiarly within its domain. We will not redetermine the facts. We hold simply that the evidence was sufficient to establish the corpus delicti, and to enable a rational trier of fact to find proof of guilt beyond a reasonable doubt. *State v. Voiles,* 226 Kan. 469, 601 P.2d 1121 (1979).

Defendant next contends that the trial court failed to submit the issue of voluntary intoxication to the jury. The judge gave the following instructions to the jury (PIK Criminal references supplied):

"No. 8. The defendant is charged with the crime of Aggravated Robbery. The defendant pleads not guilty.

To establish this charge, each of the following claims must be proved:

1. That the defendant intentionally took property of Herl Wilson Houseworth from his person or presence;

2. That the taking was by force and threat of bodily harm to Herl Wilson Houseworth;

3. That the defendant inflicted bodily harm on Herl Wilson Houseworth in the course of such conduct; and

4. That this act occurred on or about the 5th day of August, 1979, in Douglas County, Kansas."

(See PIK Crim. 56.31, 1979 Supp.)

"No. 11. A person is criminally responsible for the conduct of another when, either before or during the commission of a crime, and with the intent to promote or assist in the commission of the crime, he intentionally aids or advises the other to commit the crime." (See PIK Crim. 54.05, 1979 Supp.)

"No. 12. A person who intentionally aids another to commit a crime is responsible for any other crime committed in pursuance of the intended crime, if the other crime was reasonably foreseeable." (See PIK Crim. 54.06, 1979 Supp.)

"No. 14. Voluntary intoxication is not a defense to a criminal charge, but when a particular intent or other state of mind is a necessary element of the offense charged, intoxication may be taken into consideration in determining whether the accused was capable of forming the necessary intent or state of mind." (See PIK Crim. 54.12.)

"Aggravated Robbery is not a specific intent crime, nor is felony murder based upon Aggravated Robbery."

Defendant contends that the jury may have found him guilty of aggravated robbery as an aider and abettor; that aiding and abetting requires a specific intent; that this was not specifically pointed out to the jury in Instruction No. 14; and that the net result was to remove the defense of voluntary intoxication from the jury's consideration. We do not agree.

Instruction No. 11 specifically sets forth the intent required of one who aids or abets. Instruction No. 14 says that "when a particular intent . . . is a necessary element . . . intoxication may be taken into consideration . . . ." Defendant relies upon *State v. McDaniel & Owens,* 228 Kan. 172, 179,

612 P.2d 1231 (1980), but that reliance is misplaced. We reversed the judgment of conviction as to Owens because in that case the evidence was sufficient to support his conviction *only* as an aider and abettor, and the trial court did not give PIK Crim. 54.12, the instruction which was given to the jury as Instruction No. 14 in the case now before us. Further, the evidence here was sufficient to support Knoxsah's conviction of aggravated robbery either as a principal or as an aider and abettor.

The instructions given in this case were not incomplete, misleading, or otherwise defective. We find no error.

The judgment is affirmed.