No. 106,299

STATE OF KANSAS, *Appellee*, v. BOBBY D. EDWARDS, *Appellant*.

(327 P.3d 469)

Opinion filed June 27, 2014.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, argued the cause, and *Shawn E. Minihan*, of the same office, was with her on the briefs for appellant.

*Matt J. Maloney*, assistant district attorney, argued the cause, and *Nola Tedesco Foulston*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: Bobby Edwards seeks review of the Court of Appeals published decision affirming his conviction of aggravated robbery. We agree with the Court of Appeals and affirm.

On the evening of September 15, 2008, Wichita police received a report that Edwards was stumbling around in the streets and had punched out a store window. When police arrived, Edwards was

trying to pull down street signs and was making obscene gestures at cars. Around 10 p.m., Edwards was escorted to Via Christi Hospital, where his blood alcohol content was tested at .375. Edwards fought with and spat on the medical staff, who finally administered two 2.5-milligram injections of Haldol in order to sedate him. Edwards calmed down and went to sleep, and the staff removed restraints that they had placed on him. He woke up around 4:30 in the morning, and the staff noticed that his speech was slurred, so they allowed him to sleep longer. Around 6:30 that same morning, he woke up again. The hospital staff observed that he was walking steadily and was talking without slurred speech. The staff deemed him clinically sober and released him, still wearing hospital scrubs.

Kristie Zenner was living at the time in a townhouse in Wichita, with her boyfriend and her 6-year-old son. On the morning of September 16, 2008, Zenner remained in bed while her boyfriend got ready to leave for work, and she heard him leave around 7:30. A few minutes later, she heard a knock at the back door, and, still in her pajamas and assuming that it was her boyfriend who had left without his keys, she went downstairs to let him back in.

When she opened the door, Zenner realized that it was Edwards, not her boyfriend, who had been knocking. Although she did not know him by name, she recognized Edwards as a neighbor who lived in the apartment to the north of hers and as someone whom she had previously allowed to use her cell phone. On that occasion, he had stood outside the door, made his phone call, and returned the phone without incident.

Edwards asked if he could use her phone again. Zenner pushed the front door shut and walked into her living room to retrieve her phone from the couch. When she turned around, she discovered Edwards immediately behind her. She handed him the phone and told him he was welcome to use it but he had to go outside to do so. Edwards took the phone and put it in the pocket of the scrubs that he was wearing.

Edwards then looked over at a nearby table and saw a hammer that Zenner had been using to take down pictures. He picked up the hammer, pushed Zenner into a chair behind her, and swung the hammer so that the flat end hit her on the head. The hammer

flew out of his hand, and he began looking for it. While Edwards searched for the hammer, Zenner struggled to get away but Edwards held her in a chokehold. Zenner took advantage of her martial arts training and the fact that her head was slippery with blood from the hammer blow and was able to free herself from his grip.

Zenner noticed that her phone was lying on the chair, having apparently fallen out of Edwards' pocket during the attack. She grabbed the phone and attempted to call 911, but Edwards wrestled the phone away from her before she was able to complete the call.

As the attack was taking place, Zenner repeatedly shouted, "Rape!" Edwards told her that he was not going to rape her and that he was looking for the hammer so that he could take his "evidence" and leave. Edwards also asked who was in the house with Zenner. She initially declined to tell him but eventually mentioned that her 6-year-old son was upstairs.

As the confrontation continued, Edwards asked if Zenner could take him somewhere. Realizing that she was bleeding from her head wound, Zenner declined, saying that she needed her keys to drive for medical attention. Edwards then asked her whether she would not even give him the keys to save her life. She decided at that time to give him the keys and tried to go upstairs to put on her clothes.

As she tried to go upstairs, Edwards found the hammer in a vase. He struck her on the head a second time, knocking her back into the chair. Zenner attempted to kick him in the groin several times, but she did not succeed in incapacitating him. Edwards swung a third time, and Zenner blocked the blow, causing Edwards to lose his balance and let the hammer fall into her lap. She grabbed the head of the hammer, while Edwards grabbed the handle.

As the two struggled, Zenner told Edwards that he could leave the townhouse and take her phone and hammer with him. During the entire incident, Edwards spoke clearly. He did not slur his words, and he articulated ideas coherently. He did not stagger or shake or give any evidence of tremors. When Zenner's son began to cry, Edwards agreed to leave. Zenner and Edwards walked to the front door, each maintaining a grip on the hammer. After Ed-

wards left through the door, Zenner let go of the hammer and shut and locked the door behind him.

At Zenner's request, a neighbor called the police. While Zenner and the neighbor waited for the police to arrive, Edwards returned to Zenner's door and requested that she allow him back in the house to retrieve a bag that he had left behind. She refused and told him that the police were on the way and it would be best if he left the scene.

After the police arrived, they discovered Zenner's phone with blood on it inside a nearby apartment door. In Zenner's townhouse they found a plastic bag that contained Edwards' wallet and hospital papers.

The State charged Edwards with one count of aggravated burglary; one count of aggravated robbery, based on the taking of the cell phone and the hammer; and one count of attempted first-degree murder, based on the repeated blows to Zenner's head. Two weeks later, Edwards was taken into custody in Tulsa, Oklahoma.

At his first trial, a jury acquitted Edwards of aggravated burglary and attempted first-degree murder. The jury was unable to reach a verdict on the charge of aggravated robbery, and the district court declared a mistrial on that count. During Edwards' second trial, the district court declared a mistrial because a witness improperly testified about prior violent conduct that she had observed Edwards engage in.

At his third trial, a jury found Edwards guilty of aggravated robbery. The district court sentenced Edwards to a high-end guidelines sentence of 247 months' imprisonment. The Court of Appeals affirmed the conviction in *State v. Edwards*, 48 Kan. App. 2d 383, 290 P.3d 661 (2012), and Edwards petitioned for review before this court.

The opinion by the Court of Appeals is thorough and analytically sound. Although we granted review with respect to all issues, this opinion will focus on two questions that are matters of first impression before this court.

We initially consider whether taking Zenner's telephone and hammer were incidental to battery and were therefore insufficient

to support a conviction for robbery. Edwards contends that he did not form the specific intent to deprive Zenner of those items and that he merely obtained control over those objects in the course of carrying out some other objective, such as attacking her in her home. In support of this argument, Edwards points to *State v. Montgomery*, 26 Kan. App. 2d 346, 988 P.2d 258 (1999).

In *Montgomery*, the Court of Appeals considered a conviction after the defendant attempted to carry out a rape and, during the course of the attack, removed the victim's glasses in an apparent effort to make it more difficult for her to identify him. The defendant eventually discarded her glasses. He was charged with and convicted of attempted rape and aggravated robbery.

On appeal, the court concluded that the taking of the victim's glasses was "incidental" to the crime of attempted rape. Because theft is a lesser included offense of robbery and theft is a specific intent crime, the court read into the robbery statute a requirement of specific intent and determined that the defendant lacked the necessary intent to deprive the victim permanently of her property. In reversing the conviction of aggravated robbery, the court established a precedent that the mere incidental taking of property during the commission of another crime does not meet the "taking" element of robbery. *Montgomery*, 26 Kan. App. 2d at 350.

Before considering the continuing viability of the *Montgomery* opinion, we note initially that its underlying theory does not fit the facts of the present case. In *Montgomery*, the defendant removed the victim's glasses in an effort to help him evade identification, whereas in the present case, Edwards visited Zenner's apartment for the express purpose of using her telephone, which was one of the objects that he forcibly took from her. He later attacked her and threatened to kill her with her hammer. The telephone and the hammer were scarcely items "incidental" to the crime; they played key roles in the injuries sustained by the victim. We recognize, however, that whether a taking might be incidental or specifically intended would be a question for the jury. We therefore take up the soundness of the *Montgomery* analysis and conclude that, as a matter of law, the robbery statute does not require any-

thing more than a forced or coercive taking of property from a victim.

The Court of Appeals in the present case rejected the analysis by the *Montgomery* panel. 48 Kan. App. 2d at 397-99. The Court of Appeals appropriately began its analysis by looking at the plain language of the statutes in place at the time, K.S.A. 21-3426 and K.S.A. 21-3427.

K.S.A. 21-3426 defined robbery as "the taking of property from the person or presence of another by force or by threat of bodily harm to any person." The statutory language requires only a showing that the defendant took property "from the person or presence of another" by coercion. The statute did not require a showing of specific intent to permanently deprive the victim of the property.

Interpretation of statutes presents a question of law over which this court exercises unlimited review. *State v. Brooks*, 298 Kan. 672, 684, 317 P.3d 54 (2014). The first step in interpreting a statute is to consider the language of the statute, giving common words their ordinary meanings. When a statute is plain and unambiguous, the court will not speculate as to the legislative intent underlying the language and will not read into the statute something not readily found within it. See *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010).

The first rule of statutory construction, looking to the plain language enacted by the legislature, therefore supports the State's position that *any* taking, incidental or intentional, suffices for a robbery conviction. The statute makes no mention of intent and sets no threshold for a minimum significance of the property taken.

This court has consistently held that robbery is not a specific intent crime, although the *Montgomery* panel read a specific intent requirement into the statute. See, *e.g.*, *State v. Pennington*, 281 Kan. 426, 443, 132 P.3d 902 (2006) ("crime of aggravated robbery requires proof only of general intent"); *State v. Poulos & Perez*, 230 Kan. 512, 515, 639 P.2d 477 (1982) (specific intent to permanently deprive owner of his or her property is not an element of robbery or aggravated robbery); *State v. Knoxsah*, 229 Kan. 36, 622 P.2d 140 (1981); *State v. McDaniel & Owens*, 228 Kan. 172, 612 P.2d 1231 (1980) (aggravated robbery is not a specific intent

crime; it requires only general intent); *State v. Rueckert*, 221 Kan. 727, 732-33, 561 P.2d 850 (1977) (aggravated robbery does not require proof of specific intent, and voluntary intoxication is therefore not a defense).

In *Montgomery*, the panel was troubled by the fact that theft, a specific intent crime, is a lesser included offense of robbery, a general intent crime. Theft is indeed a specific intent crime. See, *e.g.*, *State v. Hood*, 297 Kan. 388, 393, 300 P.3d 1083 (2013). Theft is also a lesser included offense of robbery. See, *e.g.*, *State v. Plummer*, 295 Kan. 156, 164, 283 P.3d 202 (2012) (even though the specific intent element that is required to prove theft is not required to prove robbery, theft is a lesser degree of the crime of robbery under K.S.A. 21-3107[2][a]).

The *Montgomery* panel looked to K.S.A. 21-3107(2)(b), which provides an elements test for lesser crimes. K.S.A. 21-3107(2)(a), however, provided simply that "a lesser degree of the same crime" may constitute a lesser included offense. Application of the proper subsection of K.S.A. 21-3107(2) avoids the conflict that the *Montgomery* panel perceived of a lesser crime requiring specific intent and the greater crime requiring only general intent.

The *Montgomery* panel thus sought to harmonize the elements of two crimes when such harmony was not required. This court has made it clear that robbery *does not* incorporate the elements of theft. For example, in *State v. Lucas*, 221 Kan. 88, 90, 557 P.2d 1296 (1976), this court held that for robbery, unlike theft, ownership by the victim of the property taken is not an element of the crime.

When the *Montgomery* panel held that the "taking" set out in the statutory definition of robbery does not include "incidental" takings that were carried out without "an intent to keep" the property, it unnecessarily added elements to the statutory definition of the crime. 26 Kan. App. 2d at 350. It is the force element that makes robbery a crime of greater severity than theft, not the taking element.

The robbery statute requires only a forcible taking. Black's Law Dictionary defines "taking," in both civil and criminal law, as "[t]he act of seizing an article, with or without removing it, but with an

implicit transfer of possession or control." Black's Law Dictionary 1493 (8th ed. 2004). There is no requirement of specific intent, and there is no requirement that the taking be the motivation for the crime as opposed to an incident of the crime.

Edwards completed the crime of robbery as soon as he forcibly took the telephone and the hammer from Zenner's hands. The crime of robbery is complete when the individual takes possession of the property, because asportation is no longer required to complete the crime. *State v. Kunellis*, 276 Kan. 461, 469, 78 P.3d 776 (2003). The State was not required to show that Edwards ever developed the intent to permanently deprive Zenner of those items.

We conclude that the Court of Appeals in the present case properly rejected the *Montgomery* panel's analysis. In agreeing with the lower court, we expressly disapprove of *Montgomery*.

Edwards raises a second issue that this court has not previously addressed directly. He argues that the district court committed reversible error when it allowed the State to present expert witness testimony without following the procedures set out in K.S.A. 60-226.

The admission and exclusion of the testimony of an expert witness due to concerns about timely notification generally lies within the discretion of the trial court. *State v. Bridges*, 297 Kan. 989, 998, 306 P.3d 244 (2013). In the present case, however, Edwards argues that a statutory obligation lay on the State to notify him well in advance of trial that it intended to call an expert witness. Interpretation of statutes presents a question of law over which this court exercises unlimited review. *Brooks*, 298 Kan. at 685.

The defense presented the testimony of Mark Goodman, Ph.D., an expert in psychopharmacology. In rebuttal, the State presented the testimony of Timothy Rohrig, Ph.D. Edwards objected to the introduction of Rohrig's testimony on the grounds that the State failed to provide advance notice of the testimony and failed to give advance access to the records available to the prosecution. On appeal, Edwards complains that the State did not provide notice of an expert witness under K.S.A. 60-226.

The Court of Appeals found no reversible error in this issue, correctly noting that Rohrig was a rebuttal witness and no disclosure or endorsement of rebuttal witnesses is required of prosecutors. 48 Kan. App. 2d at 405. This is the correct conclusion. In *State v. Drach*, 268 Kan. 636, 646, 1 P.3d 864 (2000), this court held that prosecuting attorneys are not required to disclose or endorse the names of rebuttal witnesses. The court explained: "Because the purpose of a rebuttal witness is to refute testimony given in the case in chief, it would be hard to list rebuttal witnesses in advance, not knowing exactly what detailed testimony may be elicited during the case in chief." 268 Kan. at 646.

The Court of Appeals did not address whether the K.S.A. 60-226 provisions requiring parties in civil proceedings to provide notice of expert witnesses also govern criminal proceedings. This court has held in the past that the code of civil procedure may apply in criminal proceedings when the code of criminal procedure provides no contrary provisions. See *State v. Harris*, 259 Kan. 689, 709, 915 P.2d 758 (1996).

K.S.A. 2013 Supp. 60-226(b)(6) requires that a "party must disclose to other parties the identity of any witness it may use at trial to present expert testimony" and sets out the nature of the required disclosure. K.S.A. 2013 Supp. 60-226(b)(6)(C)(i) requires "[a]t least 90 days" notice before the date set for trial to disclose expected expert testimony, and K.S.A. 2013 Supp. 60-226(b)(6)(C)(ii) requires at least 30 days' notice of rebuttal evidence to an opposing party's expert witness. It would place a nearly impossible burden on the State to comply with both speedy trial requirements and civil expert witness notice requirements. Furthermore, K.S.A. 22-3201(g) requires the State to endorse the names of all known witnesses on the information at the time it is filed. Rebuttal witnesses would not necessarily fall into this category, because the defense theory and supporting witnesses would be unknown to the State at the time of filing the information.

K.S.A. 22-3212, on the other hand, sets out comprehensive notice and discovery requirements for the parties in criminal trials. If the legislature intended to require special expert witness requirements, it could have placed those requirements in K.S.A. 22-3212,

which is precisely what it elected to do in the 2013 legislative session. L. 2013, ch. 133, sec. 12. K.S.A. 2013 Supp. 22-3212(c)(2) now sets out requirements for defense counsel to provide to the prosecution a summary or written report of the testimony of any intended expert witness for the defense but establishes no similar requirement for the prosecution with respect to its witnesses.

We conclude that the civil discovery rules of K.S.A. 60-226 relating to expert witnesses do not apply in criminal proceedings.

Edwards raises numerous other issues on appeal. First, he argues that the State failed to produce sufficient evidence that he took Zenner's property by force. The Court of Appeals correctly cited to those parts of the record showing Zenner's testimony that, even though Edwards initially exercised control over the telephone and hammer without violence or intimidation, he dropped both objects and subsequently forcibly seized them from her possession. He pulled the telephone out of her hand while she was attempting to call 911, and she relinquished control over the hammer after each tried to wrestle it from the other and after she gave him permission to take it so that he would leave the house and stop attacking her. The evidence of a contemporaneous act of physical violence was substantial and uncontroverted.

Edwards also argues the robbery statute creates alternative means of committing the crime—taking from the person and taking from the presence of the person. The Court of Appeals rejected this argument, concluding that the robbery statute establishes a single means of committing robbery. 48 Kan. App. 2d at 400-02. This court has subsequently ruled on this question in a way consistent with the Court of Appeals' analysis of the issue. See *State v. Littlejohn*, 298 Kan. 632, 657, 316 P.3d 136 (2014) (aggravated robbery statute contains "absolutely no language" suggesting that taking property from person of or presence of victim establishes alternative means of committing aggravated robbery).

Edwards next challenges the instructions given to the jury. He contends it was error not to instruct on incidental taking under *Montgomery* and not to instruct that force must be used prior to or coincident with the taking in order to constitute robbery. As we determined above, *Montgomery* is not good law and it was not error

to omit an incidental taking instruction. We agree with the Court of Appeals reasoning that the omission of a prior force instruction was not clear error, in light of the uncontested evidence that Edwards grabbed the phone out of Zenner's hands while she attempted to call 911 and that the two wrestled for control of the hammer after Edwards dropped it.

Edwards challenges the ruling of the district court limiting the scope of the testimony of his expert witness, Goodman. The district court did not allow Goodman to testify regarding his opinion that Edwards suffers from mental illness and that the hospital should have held him longer for observation. In its opinion, the Court of Appeals rejected the argument that the district court denied Edwards the opportunity to present fully his involuntary intoxication defense. 48 Kan. App. 2d at 405-10. The Court of Appeals also held that there was no error in the exclusion of Goodman's opinion testimony that the hospital should have held him longer, because even a finding of a judgment error by the hospital would not have helped the jury determine whether Edwards was involuntarily intoxicated by Haldol at the time he committed the robbery. The reasoning by the Court of Appeals is thorough and requires no expansion on our part.

Edwards next suggests that he received prejudicially ineffective assistance of trial counsel. He does not provide a detailed analysis of how the failure to call certain witnesses or to explore certain topics had a negative impact on the development of his defense. The analysis by the Court of Appeals rejecting his claims is thorough, factually accurate, and legally correct.

In his supplemental briefing on review, Edwards argued for the first time on appeal that his conviction was unlawful because the jury was not forced to elect between convicting him based on the initial taking of the telephone and the second taking of the telephone, multiple acts that require jury unanimity. The State filed a motion asking that this court strike the portion of the supplemental brief because it raised a new issue. Edwards filed a response, asserting that he was merely raising a new argument, as opposed to a new issue.

This court is not required to consider issues that are not presented in a petition for review or fairly included in the petition. See *Sleeth v. Sedan City Hospital*, 298 Kan. 853, 854, 317 P.3d 782 (2014); *Stanley Bank v. Parish*, 298 Kan. 755, 758, 317 P.3d 750 (2014); *State v. Hunziker*, 274 Kan. 655, 662, 56 P.3d 202 (2002). The issues properly before this court include all issues properly presented to the Court of Appeals that the petition for review alleges were decided erroneously by the Court of Appeals. *State v. Allen*, 293 Kan. 793, 795-96, 268 P.3d 1198 (2012); Supreme Court Rule 8.03(g)(1) (2013 Kan. Ct. R. Annot. 74).

A review of the new arguments that Edwards raised on review leads this court to conclude that he is seeking to raise a point of contention that was not raised below. We therefore grant the motion by the State striking that part of the supplemental brief introducing the new issue.

We conclude that the errors asserted by Edwards, individually and collectively, do not warrant reversal of his conviction and sentence.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

MORITZ, J., not participating.

R. SCOTT McQUIN, District Judge, assigned.

\* \* \*

JOHNSON, J., concurring: I agree with the majority's result because there was evidence from which the jury could have found that Edwards intended to take the cell phone and hammer from Zenner, *i.e.*, the taking was not merely incidental or accidental. Accordingly, this case could have been resolved without the necessity of disapproving the holding in *State v. Montgomery*, 26 Kan. App. 2d 346, 988 P.2d 258 (1999). Indeed, even the majority ad-

mits that *Montgomery*'s "underlying theory does not fit the facts of the present case." Accordingly, one might well consider the majority's disapproval of *Montgomery* as dictum. See *Law v. Law Company Building Assocs.*, 295 Kan. 551, 564, 289 P.3d 1066 (2012) (nobody is bound by dictum, not even the court propounding it).

McQUIN, J., joins in the foregoing concurrence.