NOT DESIGNATED FOR PUBLICATION

No. 110,640

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

CHRISTOPHER CUNNINGHAM,
*Appellant.*

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed January 8, 2016. Affirmed.

*Joanna Labastida*, of Kansas Appellate Defender Office, for appellant.

*Christina Trochek*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., BRUNS, J., and ROBERT W. FAIRCHILD, District Judge, assigned.

*Per Curiam*: Christopher Cunningham appeals his convictions for the following offenses: attempted rape; two counts of rape; fourteen counts of aggravated criminal sodomy; five counts of aggravated indecent liberties with a child; and promoting obscenity to a minor. Cunningham first contends that the district judge erred in allowing the State's rebuttal evidence. This court finds that the district judge did not abuse her discretion by allowing the State to present its rebuttal evidence.

1

Cunningham also contends that the district judge erred by imposing an illegal sentence. This court has reviewed the applicable law and finds that the sentence imposed by the district judge is a legal sentence. Thus, we affirm Cunningham's convictions.

FACTS

T.C. was born on June 19, 2003. T.C's mother, Terra, was T.C's primary caretaker from her birth until shortly before her third birthday. At that time she was removed from Terra's home and placed in the custody of the paternal grandparents. T.C.'s father, Christopher Cunningham, was not involved in T.C.'s early childhood.

Eventually, T.C.'s paternal grandparents allowed Terra to be more involved in T.C.'s upbringing. Eventually, Terra visited T.C. on a daily basis. When T.C. was 7 years old, she moved back into Terra's home. However, T.C.'s grandparents retained guardianship of T.C.

T.C. began having unsupervised visits with Cunningham at Cunningham's residence, where he lived with a female friend. Some of the visits involved overnight stays. In April 2011, after having visited Cunningham's home on several occasions, T.C. complained to Terra that Cunningham "made her lick between his legs." Terra confronted Cunningham regarding T.C.'s accusations and Cunningham denied them. Terra continued to allow Cunningham unsupervised visitation with T.C.

In December 2011, Cunningham and his girlfriend moved into the basement of Terra's home. His apartment was only accessible through an exterior door. On several occasions, Cunningham sent a text message to Terra requesting a visitation with T.C. T.C. testified that, during these visits to the basement, Cunningham forced her to perform sexual acts. In April or May of 2012 Cunningham's girlfriend moved out of the basement.

2

On July 30, 2012, a social worker for the Department of Children and Families, Jill Smith-Barker, unexpectedly visited Terra's home and asked Terra if she could speak with T.C. alone. T.C. told Smith-Barker that Cunningham touched her in places she did not like. After her conversation with T.C., Smith-Barker instructed Terra to take T.C. to the police station immediately.

At the police station, T.C. met with police investigator Melissa Short in the child advocacy center. During the interview T.C. described several instances of sexual abuse in detail. After the interview, Nurse Karen Groot conducted a SANE/SART examination of T.C. Groot stated that with the exception of a small area of scar tissue on T.C.'s anus, the exam was normal.

On December 28, 2012, the State charged Cunningham with multiple sex offenses. During the trial the State presented the expert testimony of Groot. Groot first testified about her training and experience as a sexual assault nurse examiner. Groot testified that while T.C. did not have any conclusive physical injury indicating sexual abuse, her physical condition was nonetheless consistent with child sexual abuse. Groot explained that only 5 to 10 percent of child victims of sexual abuse displayed physical injury.

T.C. testified in-depth about the instances of the sexual perpetrated by Cunningham. The specific details of T.C.'s sexual abuse are not relevant to the issues before this court.

To counteract Groot's testimony, Cunningham presented the testimony of Dr. Merle "Boo" Hodges. Hodges explained that he was an obstetrician-gynecologist and received sexual assault training in the mid-1980s. Hodges further explained that he had consulted on and performed hundreds of sexual abuse examinations and remained current on literature in the area.

Hodges acknowledged that a "certain percent of exams are going to be normal." He testified that sexual assault exams of between 4 and 14 percent of victims will be normal. Hodges also testified: "96 percent of the time within 48 hours of forced sexual assault there will be some sort of bruising, lacerations, or abnormalities. So I would say 96 percent chance there should be some damage [in T.C.'s case]." Hodges ultimately concluded that T.C. would have suffered detectible physical injury based on the alleged sexual abuse.

At the conclusion of Hodges' testimony, the State informed the district court that it would present rebuttal evidence to address some portions of Hodges' testimony. Specifically, the State told the district court that the State doubted the validity of the studies referred to by Hodges and had made arrangements for Dr. Katherine Melhorn to testify in rebuttal. The State further advised the district court that after several hours of research it was unable to locate the FBI report cited by Hodges on direct examination.

Cunningham objected to the State presenting rebuttal evidence and argued it was an improper subject for rebuttal. After a discussion in which the State described the proposed testimony, the district court denied Cunningham's objection.

The State called Melhorn, a board certified pediatrician and child abuse specialist. Melhorn testified that, over the course of her career, she had conducted over 1,000 sexual abuse examinations on children and provided expert testimony in over 100 cases. Melhorn then testified that in her experience, it was uncommon to find physical injuries in child sexual abuses cases, regardless of whether vaginal or rectal penetration was involved. Melhorn cited a study published in the American Academy of Pediatrics in which the researchers examined cases in which the perpetrators of child sexual abuse confessed, pled guilty, or were convicted at trial. Melhorn explained that the study demonstrated that only 14 to 15 percent of child sexual abuse victims display detectible physical injury. The study authors also concluded that an even a smaller percentage

4

demonstrated injury in cases involving rectal penetration. The prosecutor specifically asked Melhorn about Hodges' testimony that T.C. would likely have suffered permanent physical injury from the abuse alleged by the State. Melhorn testified that she disagreed with his conclusion and reiterated that Groot's finding that T.C. did not suffer permanent physical injury was consistent with her experience.

The jury found Cunningham guilty of 2 counts of rape, 14 counts of aggravated criminal sodomy, 5 counts of aggravated indecent liberties with a child, 1 count of attempted rape, and 1 count of promoting obscenity to a minor.

At the sentencing hearing on July 29, 2013, the district court found that Cunningham's 22 offenses were off-grid Jessica's Law crimes. The 23rd crime was promoting obscenity to a minor, a misdemeanor. The district court then held that Cunningham's sentences were not limited by K.S.A. 21-4720 (now K.S.A. 2014 Supp. 21-6819). The district court sentenced Cunningham to life with a mandatory minimum term of 653 months for each of the 22 counts. The district court ordered the sentences on counts two through six, inclusive, were consecutive to each other for a controlling term of 3,265 months to life. The district court then found that the remaining counts were concurrent with the sentences on the other counts.

ANALYSIS

*Rebuttal Evidence*

On appeal, Cunningham argues the district court erred in allowing the State to present rebuttal evidence. Cunningham maintains the State opened its own door to present evidence of certain medical studies that were otherwise inadmissible during the State's case-in-chief. Cunningham claims the State would not have been allowed to introduce the studies on direct examination because the State did not provide them to

5

Cunningham in discovery. Cunningham contends that he was prejudiced by the district judge's ruling that the State could call Melhorn in rebuttal.

An appellate court may review a district court's determination on the admissibility of evidence only if the party claiming error objected to the evidence at the time of its admission. K.S.A. 60-404. At trial, Cunningham objected to the district court's decision to allow the State to present rebuttal testimony. Cunningham preserved this issue for appeal.

To determine whether a district court properly admitted rebuttal evidence, an appellate court must engage in a two-part analysis. *State v. Everett*, 296 Kan. 1039, 1044, 297 P.3d 292 (2013). First, the court must determine whether the rebuttal evidence was relevant. Second, the court must determine whether the evidence was properly admitted as rebuttal evidence. 296 Kan. at 1044.

An appellate court reviews a district court's decision concerning the admission of rebuttal evidence for abuse of discretion. 296 Kan. at 1046. "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Gant*, 288 Kan. 76, 82, 201 P.3d 673 (2009).

A district court "'has broad discretion in determining the use and extent of relevant evidence in rebuttal, and such a ruling will not be grounds for reversal absent abuse of that discretion that unduly prejudices the defendant.'" *State v. Sitlington*, 291 Kan. 458, 464, 241 P.3d 1003 (2010). Furthermore, a district court generally does not err in admitting rebuttal evidence intended to contradict facts put into evidence during the defense case. 291 Kan. at 464.

6

Cunningham does not argue the State's rebuttal evidence was irrelevant. Typically, a party waives or abandons an issue by not briefing it. *State v. Holman*, 295 Kan. 116, 125, 284 P.3d 251 (2012). However, an appellate court's refusal to consider issues a party fails to brief is a matter of prudence, not jurisdiction. See *State v. Rucker*, 49 Kan. App. 2d 414, 419, 310 P.3d 422 (2013).

The general rule is all relevant evidence is admissible unless statutorily prohibited. *State v. Riojas*, 288 Kan. 379, 382, 204 P.3d 578 (2009). Evidence is relevant if it has "any tendency in reason to prove any material fact." K.S.A. 60-401(b). This requires an appellate court to separately consider whether evidence is material and probative. *State v. Houston*, 289 Kan. 252, 261-62, 213 P.3d 728 (2009). Evidence is material if it "has a legitimate and effective bearing on the decision of the case and is in dispute." *State v. Gilliland*, 294 Kan. 519, Syl. ¶ 9, 276 P.3d 165 (2012). "Evidence is probative if it has any tendency to prove any material fact." 294 Kan. 519, Syl. ¶ 9. An appellate court reviews a district court's determination of materiality de novo and a decision concerning whether evidence is probative for abuse of discretion. *State v. Srack*, 49 Kan. App. 2d 761, 772, 314 P.3d 890 (2013), *rev. denied* 301 Kan. ___ (January 15, 2015).

The State's rebuttal evidence was material. Whether T.C.'s examination results were consistent with sexual abuse was a central issue for the jury to decide. Melhorn's testimony contradicted Hodges testimony and supported the State's position that even though T.C. did not display permanent physical injury, her examination results were consistent with examination results of other children that had been victims of sexual abuse.

The State's rebuttal evidence was also probative. Melhorn's testimony tended to prove the incidence rate at which child sexual abuse victims sustain permanent physical injury. Moreover, it tended to demonstrate that T.C.'s examination results were consistent with the alleged abuse. Melhorn's testimony also impeached Hodges' credibility by

calling into question the validity of his testimony. Thus, the State's rebuttal evidence was relevant.

Cunningham argues the district court erred in allowing the State to present rebuttal evidence because the State opened the door to its own rebuttal evidence and the evidence was otherwise inadmissible. "'[W]hen a defendant opens an otherwise inadmissible area of evidence during the examination of witnesses, the prosecution may then present evidence in that formerly forbidden sphere.'" *State v. Smith*, 28 Kan. App. 2d 56, 62, 11 P.3d 520 (2000) (citing *State v. Johnson*, 258 Kan. 475, 481, 905 P.2d 94 [1995]). However, the prosecution cannot open the door itself. *Smith*, 28 Kan. App. 2d at 62.

Cunningham seems to contend the rebuttal evidence was inadmissible during the State's case-in-chief because the State failed to follow proper discovery rules. However, Cunningham provides no authority to support this argument. In *State v. Edwards*, 299 Kan. 1008, 327 P.3d 469 (2014), the Kansas Supreme Court discussed the disclosure requirements that apply to expert witnesses. The court first noted that "prosecuting attorneys are not required to disclose or endorse the names of rebuttal witnesses." 299 Kan. at 1016. The court further analyzed whether the disclosure requirements of K.S.A. 2013 Supp. 60-226(b)(6), which pertains a party's obligation to disclose expert witnesses and the nature of their testimony in civil cases, applies in criminal proceedings. See 299 Kan. at 1016-17. K.S.A. 2014 Supp. 60-226(b)(6) provides a "party must disclose to other parties the identity of any witness it may use at trial to present expert testimony," and the disclosure must state the "subject matter on which the expert is expected to testify" and "the substance of the facts and opinions to which the expert is expected to testify." The court concluded that the disclosure requirements of K.S.A. 2013 Supp. 60-226(b)(6) do not apply in criminal proceedings, noting "[i]t would place a nearly impossible burden on the State to comply with both speedy trial requirements and civil expert witness notice requirements." 299 Kan. at 1016.

8

Cunningham's assertion that the State's rebuttal evidence is inadmissible because the State failed to comply with the appropriate discovery rules is incorrect. As discussed above, the State was not required to disclose the identity of its rebuttal witness, nor was it required to disclose the subject matter or substance of the opinions to which its expert was expected to testify.

Possibly, Cunningham believes the State's evidence was inadmissible under a theory of unfair surprise. A district court may exclude otherwise admissible evidence if it finds "that its probative value is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate that such evidence would be offered." K.S.A. 60-445. Normally, an appellate court reviews this issue under an abuse of discretion standard. *State v. Shadden*, 290 Kan. 803, 818, 235 P.3d 436 (2010).

In this case, Cunningham had a reasonable opportunity to anticipate the State's rebuttal testimony. During his case-in-chief, Cunningham offered the expert testimony of Hodges. Hodges testified at length about the likelihood of permanent physical injury following various types of sexual assault. Specifically, Hodges concluded that the results of T.C.'s medical examination were inconsistent with sexual assault because an extremely high percentage of sexual abuse victims do not have permanent, observable physical injury. In light of Hodges' testimony, Cunningham could have reasonably anticipated that the State would offer contrary expert testimony. Although Cunningham may not have been able to predict the specific study relied on by the State, he could have anticipated the State would call witnesses to establish that a low percentage of sexual abuse victims suffer permanent, detectable physical injury.

Regardless of whether the State's rebuttal evidence was originally inadmissible, the record does not support Cunningham's argument that the State opened its own door. On direct examination, Hodges claimed a very high percentage of sexual abuse victims

suffer permanent physical injury. Hodges further testified that it was his opinion that T.C. would have displayed physical injury from the sexual abuse she alleged she experienced. To support his position, Hodges cited a 1992 study that concluded only 4 percent of sexual abuse victims do not have physical trauma when examined within 48 hours of abuse. By asking Hodges to testify about a study that supported his conclusions concerning the percentage of victims of sexual abuse who suffer permanent physical injury, Cunningham opened the door to the State's presentation of contrary statistical data. The reason the State introduced rebuttal evidence was to impeach and contradict the statistical data cited by Hodges. The State's questioning of Hodges about other studies on cross-examination has no bearing on its right to present rebuttal testimony. Cunningham presented evidence of statistical findings to support his case-in-chief on direct examination. By doing so, Cunningham opened the door for the State to present contrary or impeaching statistical data during rebuttal.

Rebuttal evidence should contradict evidence introduced by an opposing party. *Sitlington*, 291 Kan. at 464; *State v. Broyles*, 272 Kan. 823, 841, 36 P.3d 259 (2001).

> "'It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts witnesses on the opposite side, but also corroborates previous testimony. *State v. Willis,* 240 Kan. 580, 583, 731 P.2d 287 (1987).'" *Sitlington*, 291 Kan. at 464.

Testimony impeaching a witness' credibility is a proper subject for rebuttal evidence. See *State v. Borthwick*, 255 Kan. 899, 918, 880 P.2d 1261 (1994).

In this case, the State's rebuttal evidence tended to refute and contradict Hodge's testimony. On direct examination, Hodges referred to statistical data regarding the

10

instance of detectable physical injury in abuse cases. Hodges first testified "from 4 to 14 percent [of child sexual abuse victims] are going to be normal," *i.e.*, not display physical signs of abuse. Hodges later testified that a 1992 study conducted by the FBI found in 96 percent of sexual abuse cases involving anal penetration the victim showed signs of physical injury. In response, the State's rebuttal witness, Melhorn, testified it was uncommon to find detectable injuries in child sexual abuse cases. Melhorn further testified that a recent study found victims in only 14 to 15 percent of sexual abuse cases showed signs of physical injury, with an even lower percentage of victims showing signs of abuse in cases involving anal penetration. The testimony of each of these witnesses directly contradicts the other.

The State's rebuttal evidence also was admissible to impeach the credibility of Cunningham's expert witness, Hodges. Other than an area of possible scar tissue, T.C. did not suffer physical injury that conclusively indicated the occurrence of sexual assault. The primary issue was whether the results of T.C.'s sexual abuse examination were consistent with the alleged sexual abuse. More specifically, the issue was whether Cunningham could have sexually abused T.C. without her suffering permanent, detectible physical injury. Both parties presented expert testimony on this issue. Cunningham offered the testimony of Hodges that had she suffered the sexual abuse she testified to, T.C. would have observable physical injury. Whether the jury believed the expert opinion of Hodges was a central issue in this case.

The district court properly allowed the State to present its rebuttal evidence to attack Hodges' credibility.

*Legality of the sentence.*

Cunningham next contends that the district court imposed an illegal sentence by failing to apply an "I" criminal history score to the 22 nonbase offenses for which

11

Cunningham was convicted as required by K.S.A. 2014 Supp. 21-6819(b)(5). Cunningham also claims the district court erred in sentencing him to more than twice the base sentence in violation of K.S.A. 2014 Supp. 21-6819(b)(4). Whether a sentence is illegal is a question of law over which an appellate court's review is unlimited. *State v. Gracey*, 288 Kan. 252, 261, 200 P.3d 1275 (2009).

Cunningham is not barred from raising this issue on appeal because he did not object to the criminal history application at sentencing. An illegal sentence may be corrected at any time and the issue may be raised for the first time on appeal. See K.S.A. 22-3504(1); *State v. Floyd*, 296 Kan. 685, 690, 294 P.3d 318 (2013). An illegal sentence is "a sentence imposed by a court without jurisdiction; a sentence that does not conform to the statutory provision, either in the character or the term of the punishment authorized; or a sentence that is ambiguous with respect to the time and manner in which it is to be served." *Gracey*, 288 Kan. at 261.

In this case, the primary issue is whether an off-grid Jessica's Law sentence pursuant to K.S.A. 2014 Supp. 21-6627(a)(2)(B) (formerly K.S.A. 21-4643[a][2][B]) is subject to the Kansas Sentencing Guidelines Act (KSGA). This issue requires the court to analyze Kansas' statutory sentencing scheme. Interpretation of a sentencing statute is a question of law, and, therefore, an appellate court's review is unlimited. 288 Kan. at 257.

First, an appellate court must ascertain the legislature's intent "'through the statutory language it employs, giving ordinary words their ordinary meaning.' [Citation omitted.]" 288 Kan. at 257. When a statute's language is plain and unambiguous, an appellate court "will not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it." 288 Kan. at 257.

As a general rule, an appellate court strictly construes criminal statutes in favor of the accused. Furthermore, an appellate court decides any reasonable doubt as to the

12

meaning of a criminal statute in favor of the accused. 288 Kan. at 257. This rule, however, is secondary to the precept that "judicial interpretation must be reasonable and sensible to effect legislative design and intent." 288 Kan. at 257-58.

K.S.A. 2014 Supp. 21-6627(a)(1) requires a defendant convicted of an off-grid Jessica's Law crime "be sentenced to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years," subject to certain exceptions. K.S.A. 2014 Supp. 21-6627(a)(2)(B) contains one such exception. It states:

> "[T]he defendant, because of the defendant's criminal history classification, is subject to presumptive imprisonment pursuant to the sentencing guidelines grid for nondrug crimes and the sentencing range exceeds 300 months. In such case, the defendant is required to serve a mandatory minimum term equal to the sentence established pursuant to the sentencing range." K.S.A. 2014 Supp. 21-6627(a)(2)(B).

Cunningham contends that the application of K.S.A. 2014 Supp. 21-6627(a)(2)(B) properly resulted in his receiving a mandatory minimum sentence of 653 months for his primary offense. He also contends, however, this was his base sentence for the purposes of applying K.S.A. 21-6819.

That section of the KSGA provides: "The sentencing judge shall establish a base sentence for the primary crime. The primary crime is the crime with the highest severity ranking. An off-grid crime shall not be used as the primary crime in determining the base sentence when imposing multiple sentences." K.S.A. 2014 Supp. 21-6819(b)(2). The sentencing judge assigns the offender's criminal history score to determine the base sentence and applies a criminal history score of I for the remaining nonbase sentences. K.S.A. 2014 Supp. 21-6819(b)(5). Although whether to run sentences consecutively is within the sentencing judge's discretion, the total sentence imposed in a case involving multiple convictions cannot exceed twice the base sentence. K.S.A. 2014 Supp. 21-6819(b)(4).

13

In *State v. Ballard*, 289 Kan. 1000, 218 P.3d 432 (2009), the Kansas Supreme Court discussed the application of the KSGA to off-grid Jessica's Law crimes. There, the defendant pled no contest to one count of aggravated indecent liberties with a child. 289 Kan. at 1002. In exchange, the State requested a downward departure from the off-grid sentence to the applicable grid sentence pursuant to K.S.A. 2006 Supp. 21-4704(d) (now K.S.A. 2014 Supp. 21-6804[d]), which the district court granted. Pursuant to Jessica's Law, the district court imposed lifetime supervision. 289 Kan. at 1002.

On appeal, Ballard argued the appropriate term of postrelease supervision was governed by the KSGA, because the sentence for his off-grid Jessica's Law crime was determined by the KSGA grid. Essentially, the defendant argued the exception to the general sentencing rule in Jessica's Law cases, contained in K.S.A. 2014 Supp. 21-6627(a)(1), availed him of the provisions of the KSGA. The Kansas Supreme Court rejected this argument and held the KSGA did not apply to the defendant's sentencing. 289 Kan. at 1012. The court maintained the defendant was sentenced for an off-grid crime rather than a grid crime. The court explained "[t]he fact that Ballard was granted a departure and received a grid sentence does not change the nature of his offense from an off-grid to a grid crime." 289 Kan. at 1012.

In this case, Cunningham makes a similar argument. Cunningham claims the district court's "departure" pursuant to K.S.A. 2014 Supp. 21-6627(a)(2)(B) avails him of the KSGA base sentence restrictions. However, as was the case in Ballard, even though Cunningham received a grid sentence for each of the 22 counts, the nature of the offenses against Cunningham is not changed—all 22 counts are off-grid crimes. The KSGA did not govern Cunningham's sentencing and K.S.A. 2014 Supp. 21-6819(b)(4) and (b)(5) are inapplicable.

Accordingly, the district court did not err in sentencing Cunningham to a controlling sentence of 3,265 months pursuant to Jessica's Law. K.S.A. 2014 Supp. 21-6627.

Affirmed.