NOT DESIGNATED FOR PUBLICATION

No. 118,011

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GREGORY K. CUNNINGHAM,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; PAULA B. MARTIN, judge. Opinion filed November 2, 2018.
Convictions affirmed, sentence vacated, and case remanded with directions.

*Randall L. Hodgkinson*, and *Sarah C. Anderson*, legal intern, of Kansas Appellate Defender
Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek
Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON, J., and WALKER, S.J.

PER CURIAM: Gregory K. Cunningham appeals following his convictions for one
count each of aggravated burglary, felony theft, misdemeanor theft, and vehicular
burglary. Cunningham argues: (1) The evidence was insufficient to support his
aggravated burglary conviction, (2) the district court erred in instructing the jury, and (3)
the court erred in classifying his prior Missouri conviction for attempted first-degree
robbery as a person felony when calculating his criminal history score. We find no error
by the district court on the first two issues and affirm Cunningham's convictions.

1

However, we agree with Cunningham that his prior Missouri conviction was misclassified under our criminal history scoring laws, vacate his sentence, and remand for resentencing.

FACTS

On the afternoon of January 20, 2017, Lindsey Goss attended a sorority meeting and then returned to her Lawrence apartment that she shared with her roommate, Maddison Majeski. Upon arrival at the apartment, Goss discovered that her bedroom door was locked. Goss first thought that she locked herself out of her bedroom but then heard some rustling noises coming from inside. After Goss jiggled the door handle a couple of times, the door latch clicked and a man, later identified as Cunningham, walked out of her room carrying a canvas bag that belonged to Goss.

Goss did not know Cunningham and was shocked to see him walking out of her room. When asked to identify himself, Cunningham claimed that he was a plumber and that he was there to fix the toilet. But Goss had never called maintenance, so she called the police. After Cunningham advised that he was going to leave, Goss called for Majeski, who came out of her own bedroom. Goss grabbed her bag from Cunningham, who again insisted that he was there to fix the toilet. As Goss and Majeski sought to verify Cunningham's story, he went into the bathroom and claimed to fix the toilet. Goss and Majeski tried to keep Cunningham from leaving the apartment, but he eventually left through the balcony door.

The police arrived shortly thereafter and apprehended Cunningham in the apartment building's parking garage. Officers searched Cunningham and discovered several items in his pockets, including a watch, some rings, headphones, and a pair of women's underwear. Goss identified these items as belonging to her. Goss also identified several items inside the canvas bag that she recovered from Cunningham as belonging to

2

her, including multiple pairs of underwear, bras, her checkbook, some paper, and some photographs.

Law enforcement also located a blue backpack on a stone wall near the front of the apartment building. The backpack contained several items, including a wallet and identification belonging to Anthonio Humphrey. Earlier that day, Humphrey had reported his backpack stolen from his car parked just north of the apartment building.

Law enforcement officers reviewed video surveillance recordings of the apartment building. To gain entry into the building, one must access a numeric keypad. Video surveillance showed Cunningham wearing a blue backpack while standing outside the building and making multiple attempts to enter the building. Cunningham was later seen, without the backpack, following a male inside the building. Once inside, Cunningham appeared to be walking toward the apartment belonging to Goss and Majeski.

The State charged Cunningham with multiple counts of burglary and theft. Cunningham ultimately stood trial for (1) aggravated burglary of the apartment, (2) felony theft for the items taken from the apartment, (3) burglary of Humphrey's car, and (4) misdemeanor theft for Humphrey's backpack and its contents. The jury found Cunningham guilty of all four counts.

Cunningham's presentence investigation (PSI) report reflected that he had a criminal history score of A, based in part on a 2005 Missouri conviction for attempted first-degree robbery that was classified as a person felony. Based on Cunningham's criminal history score of A and the severity level of his crimes, the district court sentenced Cunningham to a controlling prison term of 162 months. Cunningham has timely appealed from his convictions and sentences.

ANALYSIS

*Sufficiency of the evidence on aggravated burglary*

For his first issue on appeal, Cunningham argues that the evidence presented at trial was insufficient to support his aggravated burglary conviction. "'When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Rosa*, 304 Kan. 429, 432-33, 371 P.3d 915 (2016). "'In making a sufficiency determination, the appellate court does not reweigh evidence, resolve evidentiary conflicts, or make determinations regarding witness credibility. [Citations omitted.]'" *State v. Dunn*, 304 Kan. 773, 822, 375 P.3d 332 (2016). A verdict may be supported by circumstantial evidence if such evidence provides a basis for a reasonable inference by the fact-finder regarding the fact in issue. *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016).

Aggravated burglary is defined under K.S.A. 2017 Supp. 21-5807(b)(1) as "without authority, entering into or remaining within any . . . [d]welling in which there is a human being, with intent to commit a felony, theft or sexually motivated crime therein."

Here, the State's theory was that Cunningham entered the apartment while Majeski slept inside. The district court instructed the jury that to find Cunningham guilty of aggravated burglary, the State must prove the following elements: (1) that Cunningham entered a dwelling, (2) that Cunningham did so without authority, (3) that Cunningham did so with the intent to commit a theft therein, (4) that at the time Majeski was inside, and (5) that this act occurred on or about January 20, 2017, in Douglas County, Kansas.

4

When a jury is instructed only on the "entering into" means of aggravated burglary, the presence of a person inside the residence at the time of entry is required for conviction. *State v. Daws*, 303 Kan. 785, 793-94, 368 P.3d 1074 (2016). Cunningham argues the State failed to present evidence establishing that Majeski was inside the apartment when he entered.

At trial, Majeski testified that she had class on the morning of January 20, 2017, but had returned to the apartment afterward to shower and nap. Majeski stated that she was napping all afternoon. Majeski testified that while she was napping, she heard a noise in the kitchen but fell right back asleep. Majeski said that she remained asleep until she heard Goss return home and confront Cunningham.

Cunningham suggests that because there was no evidence presented as to the exact time he entered the apartment, it is just as likely that he was already inside before Majeski came home. The surveillance video of the apartment building did not contain a time stamp, so it was unclear exactly when Cunningham entered the apartment. But the video did show that Cunningham entered the building less than 30 minutes before the police arrived. Goss testified that she arrived at the apartment sometime around 3:30 p.m. Goss said that she discovered Cunningham in her room shortly thereafter and called the police right away. Police officer testimony established that they were dispatched to the apartment at approximately 3:27 or 3:28 p.m. and that the officers arrived "[a] couple minutes" later.

Thus, the earliest that Cunningham could have arrived at the apartment was sometime around 3 p.m., well after Majeski's morning class. There is nothing in the record to suggest that Majeski arrived home after Cunningham entered the apartment and prior to Goss' arrival. The only woman visible on the surveillance video during that timeframe was not Majeski, who was later seen on the video talking to the police.

5

As noted by the State, the video surveillance footage is not conclusive, as Goss never appeared on the video despite returning home during this timeframe. Nevertheless, this evidence, when combined with Majeski's testimony that she was home all afternoon and that she heard a noise in the kitchen while she was napping provides circumstantial evidence that Majeski was inside the apartment when Cunningham entered.

Notably, Cunningham did not challenge Majeski's presence in the apartment at trial; instead, he claimed that he lacked the requisite intent to burglarize the apartment due to his intoxication. And during closing argument, defense counsel conceded Majeski's presence in the apartment.

When viewed in a light most favorable to the State, there was sufficient evidence for a rational jury to have found Cunningham guilty of aggravated burglary. See *Logsdon*, 304 Kan. at 25 (A conviction of even the gravest offense can be based entirely on circumstantial evidence.).

*Jury instructions*

As his second issue, Cunningham argues the district court erred in instructing the jury in two respects. First, he claims the court erred by failing to instruct the jury on the lesser included offense of simple burglary of the apartment. Second, Cunningham alleges the court erred by failing to instruct the jury on the lesser included offense of misdemeanor theft for the items taken from the apartment.

At trial, Cunningham did not request either of these instructions. When jury instructions are challenged for the first time on appeal, we review the instructions for clear error. See K.S.A. 2017 Supp. 22-3414(3). This requires a two-step analysis. First, we must determine whether there was an error in the instruction, which is a question of law subject to unlimited review. If an error exists, then we must determine whether

6

reversal is required. To reverse, we must be firmly convinced that the jury would have reached a different verdict had the error not occurred. This requires a de novo determination based on a review of the entire record. *State v. Williams*, 295 Kan. 506, 515-16, 286 P.3d 195 (2012).

In reviewing for clear error, we first consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *State v. Louis*, 305 Kan. 453, 457, 384 P.3d 1 (2016). Legal appropriateness is whether the instruction fairly and appropriately states the applicable law. Like all questions of law, this court employs an unlimited standard of review. To determine whether the jury instruction was factually appropriate, we must determine if there was sufficient evidence, viewed in the light most favorable to the requesting party, to support a factual basis for the instruction. *State v. Plummer*, 295 Kan. 156, 163, 283 P.3d 202 (2012).

In count 1, the State charged Cunningham with aggravated burglary of Goss' and Majeski's apartment. Cunningham argues the district court erred in failing to instruct the jury on the lesser included offense of simple burglary.

Cunningham correctly points out that burglary is properly considered a lesser included offense of aggravated burglary. See K.S.A. 2017 Supp. 21-5109(b)(1) (defining lesser included offense as lesser degree of same crime); K.S.A. 2017 Supp. 21-5807(a), (b) (defining burglary and aggravated burglary). Thus, a simple burglary instruction would have been legally appropriate in this prosecution for aggravated burglary.

But even when an offense includes a legally appropriate lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2017 Supp. 22-3414(3). See *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014) ("'[W]here there is some evidence which would reasonably justify a conviction of some lesser included crime . . . , the judge

7

shall instruct the jury as to the crime charged and any such lesser included crime.'") (quoting K.S.A. 2017 Supp. 22-3414[3]); see also *State v. Story*, 300 Kan. 702, 710, 334 P.3d 297 (2014) (evidence must reasonably justify conviction of lesser included crime). If, after a review of all the evidence viewed in the light most favorable to the prosecution, we are convinced that a rational fact-finder could have found the defendant guilty of the lesser crime, failure to give the instruction is error. *Armstrong*, 299 Kan. at 433.

The element distinguishing simple burglary from aggravated burglary is the presence of a human being in the dwelling. See K.S.A. 2017 Supp. 21-5807(a), (b). Cunningham suggests that a simple burglary instruction was factually appropriate here given the State's failure to present any evidence to show that Majeski was present when he entered the apartment.

But, as we discussed previously, there is substantial circumstantial evidence in the record to establish that Majeski was inside the apartment when Cunningham entered. Majeski testified that she returned to the apartment after her morning class and napped all afternoon. Majeski remembered hearing a noise in the kitchen at some point while she was napping. Contrary to Cunningham's argument, there is nothing in the record to indicate that Majeski arrived home after Cunningham entered the apartment and prior to Goss' arrival. Cunningham did not contest Majeski's presence in the apartment at trial, instead claiming that he lacked the requisite intent to burglarize the apartment due to his intoxication. Defense counsel also conceded Majeski's presence in the apartment during closing argument.

Simply stated, the undisputed evidence at trial placed Majeski in the apartment when Cunningham entered, and there was no evidence that the jury could have relied upon to justify a conviction for simple burglary. A verdict based on Cunningham's theory of defense would be for a complete acquittal, not conviction of a lesser included offense.

The district court did not err in failing to instruct the jury on the lesser included offense of simple burglary.

In count 2, the State charged Cunningham with felony theft of Goss' personal property. Cunningham contends the district court erred in failing to instruct the jury on the lesser included offense of misdemeanor theft.

There is no question that misdemeanor theft is a lesser included offense of felony theft. *State v. Bryant*, 22 Kan. App. 2d 732, 738, 922 P.2d 1118 (1996); see K.S.A. 2017 Supp. 21-5109(b)(1) (defining lesser included offense as lesser degree of same crime); K.S.A. 2017 Supp. 21-5801(b)(3) (defining severity level 9 felony theft as theft of property with value of at least $1,500 but less than $25,000); K.S.A. 2017 Supp. 21-5801(b)(4) (defining misdemeanor theft as theft of property with value of less than $1,500). Thus, a misdemeanor theft instruction would have been legally appropriate here.

Under K.S.A. 2017 Supp. 22-3414(3), a district court must instruct the jury on a lesser included offense where there is some evidence that would reasonably justify a conviction of the lesser offense. "[F]or a lesser included offense to be factually appropriate, there must be actual evidence in the record, together with reasonable inferences to be drawn from that actual evidence, that would reasonably support a conviction for the lesser crime." *State v. Wade*, 295 Kan. 916, 926, 287 P.3d 237 (2012).

Here, there is no evidence in the record that the items taken from Goss were valued at less than $1,500; there is only evidence to support a finding of felony theft. Goss testified that she estimated the items Cunningham took were valued as follows:

- Feather boa - $1 to $2
- Beige bra - $35 to $40
- Resume paper - $12

9

- Checkbook - $10

- Sports bras - $90

- Underwear/lingerie - $250

- Canvas bag - $150 to $200

- Black blanket - $10

- Glass case and glasses - $95

- Scrapbook pages - $4

- David Yurman graduation ring - $800 to $900

- David Yurman bracelet - $300

- Adderall prescription - $20

- Apple watch - $300

- Beats headphones - $129 to $149

Based upon these values, the property taken amounted to just over $2,200. Goss testified that the items, as a whole, were worth more than $1,500. An owner is qualified to express an opinion as to the value of the items taken. See *State v. Owens*, 248 Kan. 273, 284-85, 807 P.2d 101 (1991).

Cunningham suggests that a misdemeanor theft instruction was warranted because Goss had received many of the items as gifts and merely estimated the value of the items without providing the bases for these estimates. But even accepting each of the lowest estimates that Goss provided still totals more than $2,200, well over the $1,500 threshold amount for felony theft. Conversely, there is no evidence from either the State or the defense that the jury could have relied upon to find that the items taken were valued at less than $1,500. Cunningham did not challenge Goss' testimony regarding the value of these items, nor did he present independent evidence about the value of the items.

In fact, during the jury instructions conference, defense counsel appeared to concede that the stolen items were worth at least $1,500. The district court asked counsel, "Is there any issue that this property could be worth less than $1,500 if [the jury] believe[s] Ms. Goss?" Defense counsel responded, "Your Honor, I don't believe so. If I did, I would raise it. But I don't think I can make that argument." And defense counsel again conceded the items' value during closing argument. Cunningham's admission that the value of the items was at least $1,500 is akin to invited error. See *State v. Verser*, 299 Kan. 776, 784, 326 P.3d 1046 (2014) (litigant may not invite error and then complain of error on appeal).

It is not necessary to give a lesser included instruction where, as here, the value of the stolen goods is established to be over the felony limit and where there is no evidence of a value of less than the felony limit. See *State v. Robinson*, 4 Kan. App. 2d 428, 429, 608 P.2d 1014 (1980). As a result, the district court did not err in failing to give a lesser included offense instruction on misdemeanor theft.

*Classification of Cunningham's Missouri felony conviction*

Finally, Cunningham argues that his sentence is illegal because the district court incorrectly classified his prior Missouri conviction for attempted first-degree robbery as a person felony when calculating his criminal history score. Specifically, Cunningham claims that (1) out-of-state inchoate crimes are automatically nonperson felonies, (2) Missouri first-degree robbery is not comparable to any Kansas person offense, and (3) the Missouri attempt statute is not comparable to the Kansas attempt statute.

Cunningham's PSI report reflected 44 prior convictions. One of these is a 2005 Missouri conviction for attempted first-degree robbery. The PSI report classified this conviction as a person felony. In addition, Cunningham had several person misdemeanors listed in his criminal history; six of these were converted to give Cunningham two

11

additional person felonies. Given Cunningham's total of three person felonies, the district court sentenced him using a criminal history score of A. See K.S.A. 2017 Supp. 21-6809. If Cunningham is correct that the district court improperly classified his prior Missouri attempted first-degree robbery conviction as a person felony, the court should have used a criminal history score of B. See K.S.A. 2017 Supp. 21-6809.

Although Cunningham did not challenge his criminal history score below, a defendant may challenge for the first time on appeal the classification of his or her prior convictions and/or the resulting criminal history score used to sentence him or her under the Kansas Sentencing Guidelines Act (KSGA). See *State v. Dickey*, 301 Kan. 1018, Syl. ¶ 3, 350 P.3d 1054 (2015); see K.S.A. 2017 Supp. 22-3504(1) ("The court may correct an illegal sentence at any time.").

Whether a prior conviction is properly classified as a person or nonperson offense requires interpretation of the KSGA and is a question of law subject to unlimited review. *State v. Luarks*, 302 Kan. 972, 976, 360 P.3d 418 (2015). Likewise, to the extent that resolution of this issue involves statutory interpretation, the interpretation of a sentencing statute is a question of law over which we have unlimited review. *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015).

Under the KSGA, a defendant's sentence is based on the severity level of the current offense and the defendant's criminal history score. See K.S.A. 2017 Supp. 21-6804(a); K.S.A. 2017 Supp. 21-6805(a). The severity level of the current offense is set by statute. The criminal history score is based on the defendant's prior convictions, including out-of-state convictions. K.S.A. 2017 Supp. 21-6809; K.S.A. 2017 Supp. 21-6811(e).

Kansas courts follow a two-step process to classify an out-of-state conviction. First, the court must categorize the prior conviction as a misdemeanor or a felony. To do so, the court defers to the convicting jurisdiction's classification of the conviction as a

felony or misdemeanor crime. K.S.A. 2017 Supp. 21-6811(e)(2). Cunningham acknowledges that the district court properly characterized his Missouri conviction as a felony. Thus, Kansas will score Cunningham's prior crime as a felony.

In the second step, the court must classify the defendant's out-of-state conviction as either a person or nonperson offense. With regard to this determination, K.S.A. 2017 Supp. 21-6811(e)(3) provides guidance: "In designating a crime as person or nonperson, *comparable* offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed shall be referred to." (Emphasis added.) If there is no comparable crime, the court should classify the conviction as a nonperson crime. But if there is a comparable offense and the Kansas crime is classified as a person crime, the out-of-state conviction should also be classified as a person crime. See K.S.A. 2017 Supp. 21-6811(e)(3).

After Cunningham filed his appellate brief, our Supreme Court clarified the meaning of a "comparable offense" as used in K.S.A. 2017 Supp. 21-6811(e)(3).

> "For an out-of-state conviction to be comparable to an offense under the Kansas criminal code, the elements of the out-of-state crime cannot be broader than the elements of the Kansas crime. In other words, the elements of the out-of-state crime must be identical to, or narrower than, the elements of the Kansas crime to which it is being referenced." *State v. Wetrich*, 307 Kan. 552, 562, 412 P.3d 984 (2018).

The State argues that *Wetrich* does not apply here because of a 2017 amendment to K.S.A. 22-3504 that states: "A sentence is not an 'illegal sentence' because of a change in the law that occurs after the sentence is pronounced." K.S.A. 2017 Supp. 22-3504(3). The State contends that the Supreme Court's ruling in *Wetrich* was a change in the law after Cunningham's sentencing, so the new identical-or-narrower-than rule does not apply to Cunningham's sentence. But the *Wetrich* court did not change the law. Instead, it merely clarified the meaning of "comparable offense" in K.S.A. 2017 Supp. 21-6811:

13

"We can resolve the issue presented here on the basis of statutory interpretation [of K.S.A. 2017 Supp. 21-6811]." *Wetrich*, 307 Kan. at 558. Because the *Wetrich* court merely interpreted a statute that was in effect at the time of Cunningham's sentencing, the *Wetrich* rule applies here. We note that another panel of this court has also taken that approach. See *State v. Montes*, No. 117,916, 2018 WL 4039484, at *6 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* September 10, 2018.

Cunningham first argues that his 2005 Missouri conviction for attempted first-degree robbery should not have been scored as a person felony because K.S.A. 2017 Supp. 21-6811(g)—which is part of the KSGA—permits a district court to consider the inchoate crimes of solicitation, attempt, and conspiracy in an offender's criminal history only if they result from a Kansas conviction rather than from an out-of-state conviction. Specifically, Cunningham argues that because the Legislature omitted a mechanism for scoring out-of-state inchoate offenses, his prior Missouri conviction for attempted first-degree robbery should have been scored as a nonperson felony.

The most fundamental rule of statutory construction is that the intent of the Legislature governs if that intent can be ascertained. *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). When construing statutes to determine legislative intent, appellate courts must consider various provisions of an act in pari materia with a view of reconciling and bringing the provisions into workable harmony if possible. *State v. Keel*, 302 Kan. 560, Syl. ¶ 7, 357 P.3d 251 (2015). Accordingly, we must view the entire KSGA as a whole and look

> "to the overall design and purpose of the [Act] and constru[e] the Act according to its spirit and reason in order to determine whether the omission at issue is a reasonable indication that the matter excluded is irrelevant to the statutory scheme and the legislative intent, or whether the omission is actually a 'silence gap' that undermines—and introduces ambiguity into—other aspects of the Act." *Keel*, 302 Kan. at 573.

14

K.S.A. 2017 Supp. 21-6811(g) states:

> "A prior felony conviction of an attempt, a conspiracy or a solicitation as provided in K.S.A. 21-3301, 21-3302 or 21-3303, prior to their repeal, or K.S.A. 2017 Supp. 21-5301, 21-5302 or 21-5303, and amendments thereto, to commit a crime shall be treated as a person or nonperson crime in accordance with the designation assigned to the underlying crime."

Cunningham is correct in pointing out that K.S.A. 2017 Supp. 21-6811(g) does not mention the classification of out-of-state inchoate offenses. Based on this, Cunningham insists that the omission of a specific reference to out-of-state inchoate offenses in subsection (g) means his 2005 Missouri conviction for attempted first-degree robbery should be counted as a nonperson crime when calculating his criminal history score.

A review of the KSGA as a whole, however, indicates that the Legislature intended for out-of-state convictions for inchoate offenses to be considered for the purpose of determining an offender's criminal history score. The KSGA clearly provides that out-of-state convictions shall be used in classifying an offender's criminal history. K.S.A. 2017 Supp. 21-6811(e)(1). The KSGA further provides that in designating an out-of-state crime as person or nonperson, a court will reference comparable offenses under the Kansas criminal code in effect on the date the current crime of conviction was committed. K.S.A. 2017 Supp. 21-6811(e)(3). These unambiguous provisions make no distinction between out-of-state convictions for an inchoate offense or a completed offense. See *State v. Barlow*, 303 Kan. 804, 813, 368 P.3d 331 (2016) (when statute is plain and unambiguous, appellate court should not speculate about legislative intent behind that clear language and should refrain from reading something into statute that is not readily found in its words).

But even if we could not ascertain the Legislature's intent from the language of the KSGA, a brief look at the legislative history of K.S.A. 2017 Supp. 21-6811(g) also

supports the conclusion that the Legislature's failure to mention out-of-state inchoate crimes is irrelevant:

> "[T]he language found in K.S.A. 201[7] Supp. 21-6811(g) was added in the 1994 legislative session. L. 1994, Ch. 291, sec. 55. According to a Summary of Legislation, published by the Legislative Research Department, what is now subsection (g) was meant to '[c]larify that an attempt, conspiracy, or solicitation of a person crime is also a person crime for criminal history purposes.' 1994 Kansas Legislature Summary of Legislation, Senate Sub. for H.B. 2332, p. 117." *State v. Dawson*, No, 113,233, 2016 WL 2772864, at *4 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1322 (2017).

Despite the lack of an explicit reference to them under K.S.A. 2017 Supp. 22-6811(g), reading the entire KSGA in context gives no indication that the Legislature intended to classify out-of-state inchoate crimes as nonperson offenses in calculating an offender's criminal history score. It is unreasonable to assume that because the Legislature did not expressly set forth how to classify out-of-state inchoate crimes, it intended them to be classified as nonperson crimes. See *State v. Frierson*, 298 Kan. 1005, 1013, 319 P.3d 515 (2014) (courts must construe statutes to avoid unreasonable or absurd results). Cunningham's argument necessarily fails.

Next, Cunningham claims that Missouri first-degree robbery is not comparable to any Kansas person offense.

In 2005, Cunningham was convicted of an attempt to commit robbery in the first degree, a felony, under Mo. Rev. Stat. § 569.020 (2000). A person commits first-degree robbery when he or she

> "forcibly steals property and in the course thereof he [or she], or another participant in the crime:
>> "(1) Causes serious physical injury to any person; or

"(2) Is armed with a deadly weapon; or

"(3) Uses or threatens the immediate use of a dangerous instrument against any person; or

"(4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument." Mo. Rev. Stat. § 569.020 (2000).

Mo. Rev. Stat. § 569.010.1 (2000) defines "forcibly steals" to mean

"[W]hen, in the course of stealing, as defined in [Mo. Rev. Stat. §] 570.030 . . . he [or she] uses or threatens the immediate use of physical force upon another person for the purpose of:

"(a) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or

"(b) Compelling the owner of such property or another person to deliver up the property or to engage in other conduct which aids in the commission of the theft."

Under Mo. Rev. Stat. § 570.030.1 (2000), "[a] person commits the crime of stealing if he or she appropriates property or services of another with the purpose to deprive him or her thereof, either without his or her consent or by means of deceit or coercion."

When Cunningham committed the current crimes of conviction in 2017, the Kansas offense most comparable to first-degree robbery in Missouri was our crime of aggravated robbery. K.S.A. 2016 Supp. 21-5420(a) defines robbery as "knowingly taking property from the person or presence of another by force or by threat of bodily harm to any person." K.S.A. 2016 Supp. 21-5420(b) defines aggravated robbery as robbery when committed by a person who (1) is armed with a dangerous weapon or (2) inflicts bodily harm upon any person in the course of such robbery.

Cunningham argues that the Missouri statute is broader than the Kansas statute because Kansas requires that the taking be from a person or from within a person's presence. Contrary to Cunningham's assertion, however, our analysis is that the Missouri

17

first-degree robbery statute is, in fact, slightly narrower than the Kansas' aggravated battery statute in three separate respects.

First, the language of our law is disjunctive: an aggravated battery may be committed by knowingly taking property from either the "person *or* presence" of another. By contrast, Mo. Rev. Stat. § 569.010.1, which defines the phrase "forcibly steals," requires the use or threatened immediate use of physical force directly upon another person, and not merely in their presence. To this extent, we believe Kansas law is slightly more expansive than the comparable Missouri statutes.

A second and even more critical distinction exists because under the Missouri statute the use or threat of force to complete the crime must have, as its specific objective, either "preventing or overcoming resistance" to the taking or retention of the stolen property or, alternatively, "compelling the owner . . . or another person" to deliver the property or aid in the completion of the taking. In Kansas, the mere fact that force or threat of bodily injury was used is sufficient under the statute. Unlike Missouri, our laws have no specific qualifiers or additional elements that must be proven to establish that the use of force or threats violated the law. Thus, the Kansas statute is broader than Missouri law in this respect.

Third, the requirements for first-degree robbery in Missouri are actually more specific than those for aggravated robbery in Kansas because Missouri requires an offender to forcibly steal property from another person with the *specific purpose* of depriving that person of their property. See Mo. Rev. Stats. §§ 569.010.1, 569.020, 570.030.1. In contrast, Kansas' robbery statute "requires only a forcible taking"—"[t]here is no requirement of specific intent, and there is no requirement that the taking be the motivation for the crime as opposed to an incident of the crime." *State v. Edwards*, 299 Kan. 1008, 1014-15, 327 P.3d 469 (2014). When looking at whether a robbery happened in Kansas, the offender must have (1) used force or threatened to use force, and (2)

knowingly taken property from the person or presence of another. K.S.A. 2017 Supp. 21-5420(a). The robbery is aggravated if the offender was (1) armed with a dangerous weapon or (2) inflicted bodily harm upon any person. K.S.A. 2017 Supp. 21-5420(b). Although all these elements also are required for Missouri first-degree robbery, Missouri additionally requires the specific intent of depriving the victim of his or her property. The robbery statute in Kansas does not require a specific intent element, so its elements are broader than the elements of Missouri's offense. Conversely, Missouri's first-degree robbery elements are narrower than Kansas' robbery elements, making the two crimes comparable under the holding in *Wetrich*.

Nevertheless, our analysis does not end here, because Cunningham's prior conviction was for *attempted* first-degree robbery. Cunningham argues that the Kansas and Missouri attempt statutes are not comparable because the Missouri statute criminalizes a broader range of activity.

In Kansas, an attempt is defined as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2017 Supp. 21-5301(a). The Kansas Supreme Court has explained that "[a]n overt act 'necessarily must extend beyond mere preparations made by the accused and must approach sufficiently near to the consummation of the offense to stand either as the first or subsequent step in a direct movement toward the completed offense.' [Citation omitted.]" *State v. Brown*, 306 Kan. 1145, 1163, 401 P.3d 611 (2017).

The applicable Missouri statute which was in effect at the time of Cunningham's Kansas convictions, was Mo. Rev. Stat. § 564.011.1 (2000), which provides:

"A person is guilty of attempt to commit an offense if, with the purpose of committing the offense, a person performs any act which is a substantial step toward the

19

commission of the offense. A **'substantial step'** is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense."

"A person '**acts purposely**,' or with purpose, with respect to his [or her] conduct or to a result thereof when it is his [or her] conscious object to engage in conduct or to cause that result." Mo. Rev. Stat. § 562.016.2. (2000).

Although the Kansas and Missouri attempt statutes appear similar at first blush, the legislative history of Missouri's attempt law reveals that Missouri's attempt statute is broader. Prior Missouri attempt law contained "tougher" language, requiring that "'the defendant must have taken steps going beyond mere preparation, by doing something bringing him [or her] nearer the crime he [or she] intends to commit.' [Citation omitted.]" *State v. Molasky*, 765 S.W.2d 597, 600 (Mo. 1989) (prior attempt law required defendant "to come very close to the actual commission of the offense in order to be convicted of attempt"). But Missouri changed the statutory definition of attempt with the enactment of the Missouri Criminal Code in 1979. 765 S.W.2d at 600. By adopting Mo. Rev. Stat. § 564.011, Missouri "'abandoned the "mere preparation" test or the requirement of an "overt act" in attempt law.'" *State v. Bates*, 70 S.W.3d 532, 538 (Mo. App. 2002); see *Molasky*, 765 S.W.2d at 600 ("The revision lowered the threshold needed to find the offense of attempt by shifting the emphasis away from what an actor still had to accomplish and refocusing instead upon what the actor had already done.").

Missouri, unlike Kansas, has no overt act requirement in its attempt law. As a result, the Missouri attempt statute is broader than the Kansas attempt statute and therefore cannot be used as a comparable offense under K.S.A. 2017 Supp. 21-6811(e)(3). See *Wetrich*, 307 Kan. at 558-61. Because it is not a comparable offense, Cunningham's 2005 Missouri conviction for attempted first-degree robbery cannot be

20

considered a person felony for calculation of his criminal history score, but instead it must be treated as a nonperson felony.

In conclusion, we find sufficient evidence exists to support Cunningham's conviction for aggravated burglary. Likewise, we find no error in the jury instructions given by the district court. Therefore, all of Cunningham's convictions are affirmed. However, because we find that Cunningham's Missouri conviction for attempted first-degree robbery was erroneously scored as a person felony, we vacate Cunningham's sentence and remand with directions for the district court to resentence him after scoring his 2005 Missouri conviction for attempted first-degree robbery as a nonperson felony.

Convictions affirmed, sentence vacated, and case remanded with directions.